# In the United States Court of Federal Claims

No. 09-042L

(Filed: April 12, 2011)

| | |
|---|---|
| ******************************************<br><br>ANNA F. NORDHUS FAMILY TRUST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant.<br><br>****************************************** | National Trails System Act, 16 U.S.C. § 1241 et seq. (2006); Fifth Amendment Taking Claim; Railroad's Abandonment of Easement; Federal Board's Notice of Interim Trails Use Blocked Reversion to Fee Simple Landowners Under Kansas Law. |

*R. Deryl Edwards, Jr.*, Law Offices of R. Deryl Edwards, Jr., Joplin, Missouri, for Plaintiffs.

*Mark S. Barron*, with whom was *Ignacia S. Moreno*, Assistant Attorney General, Environmental & Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

     Plaintiffs in this rails-to-trails case are Kansas real property owners who claim to hold a fee simple interest in land subject to a railroad right-of-way. Their Fifth Amendment takings claims have been joined in one action for the resolution of common issues of federal and Kansas law. The case involves an 8.13-mile corridor of land just north of Marysville, Kansas in Marshall County, near the Nebraska border. Pending before the Court are the parties' cross-motions for summary judgment on liability. The Court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2006).

The question presented is whether a December 15, 2003 Notice of Interim Trail Use ("NITU") issued by the Federal Surface Transportation Board ("STB") constituted a Fifth Amendment taking of Plaintiffs' property interests. Subsidiary questions are whether the Union Pacific Railroad abandoned its rights in the easements it held, and whether the "railbanking" of otherwise abandoned railroad easements for possible future use constituted a railroad purpose under Kansas law. "Railbanking" is a procedure allowing for interim trail use of abandoned railroad corridors, permitted by Congress through 1983 Amendments to the National Trails System Act, 16 U.S.C. § 1241 et seq. (2006) (the "Trails Act"). See Neb. Trails Council v. Surface Transp. Bd., 120 F.3d 901, 903 n.1 (8th Cir. 1997) (the term railbanking refers to "the preservation of railroad corridor for future rail use."); Caldwell v. United States, 57 Fed. Cl. 193, 194 (2003) (under the railbanking process, "[t]he right-of-way is 'banked' until such future time as railroad service is restored."), aff'd 391 F.3d 1226 (Fed. Cir. 2004).

Guidance from the Federal Circuit in these cases is that a Fifth Amendment taking occurs if federal government action destroys state-defined property rights by converting a railroad easement to a recreational trail, if trail use is outside the scope of the railroad easement. Ladd v. United States, 630 F.3d 1015, 1019 (Fed. Cir. 2010); Ellamae Phillips Co. v. United States, 564 F.3d 1367, 1373 (Fed. Cir. 2009). Thus, in this case, the Court must look to Kansas law to determine the scope of the railroad easement, and then examine whether the federal action blocked Plaintiffs' property rights.

For the reasons explained below, the Court concludes that the federal entity's issuance of the NITU on December 15, 2003 prevented Plaintiffs from receiving their reversionary interest following the railroad's abandonment of its easements. The current interim trail uses are not within the permissible scope of the railroad easements under Kansas law, and therefore a Fifth Amendment taking has occurred. Plaintiffs' motion for partial summary judgment is GRANTED, and Defendant's cross-motion for partial summary judgment is DENIED.

## Background[1]

In the mid-1800s, the Kansas legislature created a process to allow railroads to establish right-of-ways over private property. Kan. Gen. Stat. Ch. 23 § 47 (1868) provided in part:

---

[1]  The facts contained herein are taken from the parties' proposed findings of uncontroverted fact and supporting exhibits, filed concurrently with the cross-motions for partial summary judgment. The Court finds that there are no genuine issues of any material facts.

> Every railway corporation shall . . . have power . . . [t]o take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railway; but the real estate received by voluntary grant, shall be held and used for the purpose of such grant only . . . .

Kan. Gen. Stat. Ch. 23 § 81 (1868) provided in part:

> Any duly chartered and organized railway corporation may apply to the board of county commissioners of any county through which such corporation proposes to construct its road, to lay off, along the line of such proposed railroad, as located by such company, a route for such proposed railroad, not exceeding one hundred feet in width . . . a right of way over adjacent lands sufficient to enable such company to construct and repair its roads and stations, and a right to conduct water by aqueducts, and the right of making proper drains.

Additionally, Kan. Gen. Stat. Ch. 23 § 84 (1868) provided in part:

> If such company shall cause the copy of the report [of Commissioners], so certified, to be, within ten days after such certifying, filed and recorded in the office of the register of deeds for such county, it shall have the right to occupy the land so embraced within such route, for the purposes necessary to the construction and use of its road; and to such portions of the road over which a railroad shall be actually constructed within such time, the perpetual use of such lands shall vest in such company, its successors and assigns, for the use of the railroad, as soon as so much of such railroad shall have been constructed.

The Marysville & Blue Valley Railroad ("M&BVRR") incorporated in the State of Kansas on July 5, 1879. The M&BVRR was the predecessor to the Union Pacific Railway Company ("Union Pacific"). In 1879, the M&BVRR initiated proceedings in the Marshall County, Kansas District Court ("District Court") to condemn privately owned real property in Marshall County for a railroad right-of-way. On September 6, 1879, the M&BVRR filed one or more civil actions in the District Court seeking condemnation of private property for imposition of a railroad right-of-way. The M&BVRR petitioned the District Court, the Honorable Andrew Wilson presiding, in relevant part as follows:

> Your Petitioner, the Marysville and Blue Valley Railroad Company, duly incorporated under and by virtue of the laws of the State of

> Kansas respectfully represents that it is organized and incorporated as required by law and that it proposes to construct its railroad from the town of Marysville in Marshall County, Kansas northwardly through the township of Marysville to the State Line between Kansas and Nebraska and the said Marysville and Blue Valley Railroad respectfully petitions your Honor to appoint three Commissioners the same to be freeholders and residents of Marshall County Kansas to lay off along the line of said railroad located by said Company a route for said proposed Railroad Company in said County of Marshall not exceeding 100 feet in width . . . .

(M&BVRR Petition & Appointment of Commissioners, Sept. 6, 1879, Kan. Misc. Rec. No. 18, at 3-4.)

On September 8, 1879, the District Court entered an order, dated September 6, 1879, appropriating for the benefit of the M&BVRR a strip of land 100 feet wide over and through Plaintiffs' real property. The District Court's order stated:

> Now Therefore, I, Andrew Wilson, Judge of such District Court aforesaid by authority of law in me vested do hereby appoint as such Commissioners . . . each being freeholders and a resident of said County of Marshall to perform each and every & all the duties aforesaid and to make due return of their proceedings in the manner prescribed by law . . . .

(Order, Sept. 6, 1879, filed Sept. 8, 1879, with J.B. Winkler, Register of Deeds.)

On October 4, 1879, the *Marshall County News* published the following notice:

> Notice is hereby given that the commissioners appointed by the District Judge for Marshall county will proceed to lay off the railroad route for the Marysville & Blue Valley Railroad upon the 14th day of October, 1879 commencing at the town of Marysville and proceeding along the located line of said route to the county line, and will appraise, determine, and assess the damages done to the real estates over which the same will, pass according to law.

(*Marshall County News*, vol. viii, Marysville, Kan., Oct. 4, 1879, No. 2.)

On October 14, 1879, the three Commissioners appointed by the District Court to appraise the property taken for the M&BVRR railroad right-of-way, Daniel Clark, Francis Thompson, and F.J. Pierce, performed their appraisal, and

4

recorded their findings in a journal entry entitled "Description of land condemned for right-of-way for construction of RR – County Treasurer's Office Marshall County, Kansas." The Marshall County, Kansas Treasurer separately entered into its records the payments made to individual landowners for their damages occasioned by the M&BVRR. The payments were made over the next several years. The M&BVRR and each successive railroad company, including Union Pacific, thereafter obtained and possessed the right-of-way over Plaintiffs' property to use the 100-foot wide corridor for railroad purposes.

More than a century later, in 1986, the Kansas legislature sought to regulate railroad abandonment, and passed Kan. Stat. Ann. § 66-525, which provided in relevant part:

> (a) For purposes of this section, a railroad right-of-way shall be considered abandoned when:
>
> (1) The tracks, ties, and other components necessary for operation of the rail line are removed from the right-of-way following the issuance of an abandonment order by the appropriate federal or state authority . . . .
>
> (f) Except where a railroad company conveys its right, title and interest in and to railroad right-of-way which it owns in fee simple, any conveyance by a railroad company of any actual or purported right, title or interest in property acquired in strips for right-of-way to any party other than the owner of the servient estate shall be null and void, unless such conveyance is made with a manifestation of intent that the railroad company's successor shall maintain railroad operations on such right-of-way.

The Plaintiffs who allege that they owned real property subject to the referenced railroad right-of-way as of December 15, 2003, and whose interests have been joined in one action for the resolution of common issues of federal and Kansas law, are as follows: Howard and Evelyn Baker, John and Lori Brackett, Gustoff Claeys, Ricky and Kandyce Cudney, Dam Holdings, LLC, Robert and Jean Dummermuth, Edna M. Gee Trust, Mark and Randy Goeckel, Allen and Marcia Hahn, William Jenkins, Wilbur and Loretta Jueneman, Dennis Kane, Kenneth and Carol Koch, Larry and Janice Koll, Ted and Collen Nemec, Anna F. Nordhus Family Trust, Francis A. Nordhus Family Trust, William and Millie Smith Family Trust, Smith Farm Ventures, L.P., Douglas E. and Phyllis I. Totten, and Robert L. and Mary Young.

Union Pacific was a successor to the M&BVRR railroad line. Union Pacific operated a railroad between mile post 133.13 near Marysville, Kansas through and including mile post 125.00 near Marietta, Kansas. On October 29, 2003, Union Pacific submitted a Notice of Exemption to the STB stating that it intended to abandon this railroad corridor. The Notice of Exemption stated:

> There appears to be no reasonable alternative to the abandonment. There is no local or overhead traffic. The track has been out of service for over two years . . . . The property proposed for abandonment is not suitable for other public purposes, including roads or highways, other forms of mass transportation, conservation, energy production or transmission because the area is adequately served and access to the Property is limited . . . . The title to all of the operating right-of-way is reversionary in nature.

(Union Pacific Notice of Exemption, Oct. 29, 2003.)

On November 10, 2003, the Nebraska Trails Foundation, Inc. filed comments with the STB requesting the issuance of a NITU and the imposition of a public use condition pursuant to 49 C.F.R. 1152.28 and 49 U.S.C. § 10905 for the purpose of railbanking the public use of the existing railroad railbed. The comments included an express condition that the STB order Union Pacific not to remove any bridges, trestles, culverts, or "roadbed materials" or "rail-related structures" along the line. On the same date, the Nebraska Trails Foundation filed with the STB a "Statement of Willingness to Assume Financial Responsibility." This document stated that the Nebraska Trails Foundation was "willing to assume full responsibility for management of, for any legal liability arising out of . . . and for the payment of any and all taxes that may be levied or assessed against, the right of way" as required by 49 C.F.R. 1152.29. See (STB Docket No. AB-33, Sub No. 208X.)

On November 18, 2003, Union Pacific's Notice of Exemption was served and published in the Federal Register, and the exemption was scheduled to become effective on December 18, 2003. 68 Fed. Reg. 65,114-15 (Nov. 18, 2003). Also on November 18, 2003, the STB recorded that Union Pacific had filed a Notice of Exemption under 49 C.F.R. 1152 Subpart F to abandon the referenced railroad line. (STB Docket No. AB-33, Sub No. 208X.)

By letter dated December 4, 2003, Union Pacific indicated its willingness to negotiate with the Nebraska Trails Foundation for interim trail use. On December 15, 2003, the STB issued a decision that granted the Nebraska Trails Foundation's request for issuance of a NITU and a public use condition.

Nearly two years later, on December 6, 2005, Union Pacific and the Nebraska Trails Foundation executed a quit claim deed, filed in the Marshall County, Kansas Recorder of Deeds Office, Book 433, pages 649-52.  The quit claim deed stated in part that Union Pacific:

> remised, released, donated and quitclaimed, and by these presents does REMISE, RELEASE, DONATE and forever QUITCLAIM unto NEBRASKA TRAILS FOUNDATION, a Nebraska corporation . . . its successors and assigns, forever, all of its right, title, interest, estate, claim and demand, both at law and equity, of, in and to the real estate (the "Property") situate in Marshall County, State of Kansas . . . .

(Union Pacific Quit Claim Deed, Dec. 6, 2005.)

On December 12, 2005, Union Pacific posted a letter to the STB advising that Union Pacific, as of December 6, 2005, had "discontinued service . . . between Milepost 133.3 to Milepost 125 . . . pursuant to the National Trails System Act."

On or about August 14, 2008, the Nebraska Trails Foundation executed a quit claim deed with the Marshall County Connection, Inc., conveying the Foundation's right, title and interest to any and all rights of way, reservations and easements of record to Marshall County Connection, Inc., recorded in Book 448, pages 336 and 339 in the Marshall County, Kansas Recorder of Deeds.

Plaintiffs filed their complaint in this Court on January 21, 2009, and moved for summary judgment regarding liability on September 15, 2009. Plaintiffs filed amended complaints on two occasions to join additional parties on Plaintiffs' side.  Following a stay for more than a year to await a decision on another case involving Kansas law,[2] Defendant filed its response and cross-motion for summary judgment on liability on December 17, 2010.  Plaintiffs filed a combined response and reply brief on January 16, 2011, and Defendant filed its reply brief on January 28, 2011.  The Court heard oral argument on March 21, 2011.

---

[2] By order dated February 27, 2009 in another rails-to-trails case, Judge Nancy B. Firestone of this Court certified three questions of Kansas state law to the Kansas Supreme Court.  Biery v. United States, No. 07-675L (Fed. Cl. Order, Feb. 27, 2009).  On September 23, 2010, the Kansas Supreme Court dismissed the Biery case, finding that it had no jurisdiction to accept certified questions from the Court of Federal Claims.  Biery v. United States, No. 102,006 (Kan. Order to Dismiss, Sept. 23, 2010).

Discussion

A.  Standard of Review

A Court should enter summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  RCFC 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  Summary judgment will not be granted if "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party."  Liberty Lobby, 477 U.S. at 248.  The party moving for summary judgment bears the initial burden of demonstrating the absence of genuine issues of material fact.  Celotex, 477 U.S. at 323.  In reviewing a motion for summary judgment, the Court examines the factual record and reasonable inferences drawn therefrom in the light most favorable to the party opposing the motion.  Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Colvin Cattle Co., Inc. v. United States, 468 F.3d 803, 806 (Fed. Cir. 2006).

When cross-motions for summary judgment are presented, the Court evaluates each motion on its own merits and resolves all doubts and inferences against the party whose motion is being considered.  Tenn. Valley Auth. v. United States, 60 Fed. Cl. 665, 670 (2004) (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987)).  The Court will deny both motions if, upon the required analysis, a genuine issue of material fact exists.  Id.

B.  Applicable Law

Under Plaintiffs' theory of the case, if Union Pacific were to abandon its railroad right-of-way, the easement would end and the property would revert to Plaintiffs as the fee simple owner.  However, by operation of the Trails Act, the reversion to Plaintiffs is prevented.  Plaintiffs describe the conversion of the railroad right-of-way to a recreational trail as a Congressional preemption of state property law.  In determining the effects of federal action on real property, the Court must look to the law of the state where the property is located.  Swisher v. United States, 176 F. Supp. 2d 1100, 1101-02 (D. Kan. 2001); Glosemeyer v. United States, 45 Fed. Cl. 771, 776 (2000) (citing Foster v. United States, 221 Ct. Cl. 412, 420-21, 607 F.2d 943 (1979)).  Whether the Trails Act effects a taking depends "upon the nature of the state-created property interest that petitioners would have enjoyed absent the federal action and upon the extent that the federal action burdened that interest."  Preseault v. I.C.C., 494 U.S. 1, 24 (1990) (O'Connor, J., concurring).  Accordingly, the Court must examine under Kansas law whether the railroad easement would have been extinguished if not for the

8

application of the Trails Act, and whether a new easement for recreational trails has been imposed. Glosemeyer, 45 Fed. Cl. at 776.

   C.  Plaintiffs' Property Interests

The Court will assume for purposes of the parties' cross-motions for summary judgment on liability that the named Plaintiffs each owns a fee simple interest in the real property that is the subject of this lawsuit. Each Plaintiff has presented to the Court a warranty or quit claim deed evidencing when and by what instrument he or she acquired ownership rights in the property. Each Plaintiff also provided evidence of real estate tax payments to Marshall County, Kansas during 2003, the year of the issuance of the NITU. The Plaintiffs furnished a Marshall County, Kansas appraiser's map outlining the Plaintiffs' property and its connection to the railroad right-of-way. While Defendant has reserved its right to challenge the standing of any individual landowner based upon information that may later be discovered, Defendant has not disputed that each named Plaintiff owns a fee simple interest.

Under Kansas law, it is clear that railroads exercising statutory powers of condemnation acquired easements in the right-of-way. As early as 1879, the Kansas Supreme Court detailed the permissible uses and scope of a railroad easement. The Kansas Court stated:

> An easement merely gives to a railroad company a right of way in the land; that is, the right to use the land for its purposes. This includes the right to employ the land taken for the purposes of constructing, maintaining and operating a railroad thereon. . . . The former proprietor of the soil still retains the fee of the land and his right to the land for every purpose not incompatible with the rights of the railroad company. Upon the discontinuance or abandonment of the right of way, the entire and exclusive property and right of enjoyment revest in the proprietor of the soil.

Kan. Cent. Ry. Co. v. Allen, 22 Kan. 285, 293-94 (1879). In 1962, the Kansas Supreme Court reaffirmed its long-standing rule regarding railroad easements:

> We have held that when land is devoted to railroad purposes it is immaterial whether the railway company acquired it by virtue of an easement, by condemnation, right-of-way deed, or other conveyance. *If or when it ceases to be used for railway purposes, the land concerned returns to its prior status as an integral part of the freehold to which it belonged prior to its subjection to use for railway purposes.* Fed. Farm Mortg. Corp. v. Smith, 149 Kan. 789, 792, 89

9

P.3d 838 [(1939)]. This court has uniformly held that railroads do not own fee titles to narrow strips taken as right-of-way, regardless of whether they are taken by condemnation or right-of-way deed.

Harvest Queen Mill & Elevator Co. v. Sanders, 370 P.2d 419, 423 (Kan. 1962) (emphasis added); see also Harvey v. Mo. Pac. R.R. Co., 207 P. 761, 762 (Kan. 1922) (explaining that a landowner "whose property is subjected to condemnation for railway or other public uses is none the less the owner of the fee and holder of the ultimate title"); Atchison, Topeka & Santa Fe Ry. Co. v. Humberg, 675 P.2d 375, 377 (Kan. Ct. App. 1984) (distinguishing cases involving an unequivocal intent to convey a fee interest in the conveyance of a fee instrument, and observing that "[r]egardless of how a railroad obtains a right-of-way, our courts have consistently held the railroad does not obtain fee simple title to the right-of-way").

In this case, Defendant does not dispute that the M&BVRR acquired an easement through the 1879 statutory condemnation proceedings. Therefore, consistent with Kansas law, the Plaintiff landowners held a fee simple interest subject to the railroad easement.

D. Union Pacific's Abandonment

Under the Trails Act, the conversion of the railroad's right-of-way to trail use potentially blocks the reversion of the easement to the fee simple landowner. If not for the execution of a trail use agreement, "state property law would be revived and, possibly, trigger the extinguishment of rights-of-way and the vesting of reversionary interests." Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd., 158 F.3d 135, 139 (D.C. Cir. 1998). In such circumstances, when a reversionary interest is blocked, the interim trail is deemed a taking. Preseault v. United States, 100 F.3d 1525, 1550-52 (Fed. Cir. 1996) (en banc) ("Preseault II"); Glosemeyer, 45 Fed. Cl. at 781-82. The holder of a reversionary interest that does not vest because of a trail use is entitled to compensation.

Kansas courts have addressed the issue of when a railroad has abandoned its right-of-way. See Gauger v. Kansas, 815 P.2d 501, 503 (Kan. 1991) ("To constitute abandonment of a railroad right-of-way there must be a uniting of intent to renounce all interest in the right-of-way with a clear and unmistakable intent to carry out that intent."); Miller v. St. Louis, Sw. Ry. Co., 718 P.2d 610, 613 (Kan. 1986) (quoting Martell v. Stewart, 628 P.2d 1069, 1071 (Kan. Ct. App. 1981)) (the railroad's intent must "be neither to use nor retake the property" and the act must "be clear and unmistakable" showing "a purpose to repudiate . . . ownership").

Here, Union Pacific's regulatory filings with the STB unequivocally expressed an intent to renounce the railroad's interest in the right-of-way. In the

10

Notice of Exemption, Union Pacific stated that it "intends to abandon the Marietta Industrial Lead from milepost 133.13 near Marysville to milepost 125.00 near Marietta," that "there appears to be no reasonable alternative to abandonment," and that "[t]he property proposed for abandonment is not suitable for other public purposes." (Union Pacific Notice of Exemption, Oct. 29, 2003, ¶¶ (a)(3), (e)(4).) These statements in Union Pacific's application are clear evidence of the railroad's intent to abandon its easements. Moreover, in its notice, Union Pacific was not considering a potential for railbanking, as it observed that the "title to all of the operating right-of-way is reversionary in nature." Id. ¶ (e)(4).

As the Court observed in Glosemeyer, construing Missouri law:

> In the case of railroads . . . an easement for a railroad right-of-way is extinguished when the railroad ceases to run trains over the land. The test for abandonment of an easement under Missouri law is therefore, non-user of the easement accompanied by conduct indicating an intention to abandon.

Glosemeyer, 45 Fed. Cl. at 777 (quoting Kansas City Area Transp. Auth. v. 4550 Main Assoc., Inc., 742 S.W. 2d 182, 189 (Mo. Ct. App. 1986)). The same outcome would be reached under Kansas law.

Union Pacific actually rid itself by conveyance of its entire legal interest in these easements. The Marshall County Connection, Inc., not Union Pacific, is now the owner of record of the easements, and it is modifying the former rail beds for use as recreational trails. Conveying an interest in land to another party is clear evidence of abandonment, particularly when the new use is for a different purpose. See Glosemeyer, 45 Fed. Cl. at 778. The Court finds it immaterial that the actions and conveyances completing the transactions may not have occurred until after the STB issued the December 15, 2003 NITU. The fact remains that the federal agency's action blocked the reversion of the easement to the fee simple landowners following abandonment.

E. Trail Use

Defendant contends that the use of Union Pacific's former railroad corridor as a recreational trail on an interim basis constitutes a permissible railroad purpose under Kansas law. However, the 1986 Kansas statute, Kan. Stat. Ann. § 66-525, is contrary to Defendant's position. This law provides that any conveyance of the railroad's right-of-way interest to another party "shall be null and void, unless such conveyance is made with a manifestation of intent that the railroad company's successor shall maintain railroad operations on such right-of-way." Kan. Stat. Ann. § 66-525(f).

11

As the Court has observed, railroad operations consist of installing and maintaining tracks, and running trains over those tracks.  See Glosemeyer, 45 Fed. Cl. at 778.  To state the obvious, removing tracks to establish recreational trails is not consistent with a railroad purpose, and cannot be regarded as incidental to the operation of trains.  The Federal Circuit addressed this precise question in the following way:

> [I]t appears beyond cavil that use of these easements for a recreational trail – for walking, hiking, biking, picnicking, frisbee playing, with newly-added tarmac pavement, park benches, occasional billboards, and fences to enclose the trailway – is not the same use made by a railroad, involving trucks, depots, and the running of trains.

Toews v. United States, 376 F.3d 1371, 1376 (Fed. Cir. 2004).  Similarly, the Federal Circuit, interpreting Vermont law in Preseault II, observed that it could "find no support in Vermont law for the proposition . . . that the scope of an easement limited to railroad purposes should be read to include public recreational hiking and biking trails."  Preseault II, 100 F.3d at 1530.

Moreover, because the easement reverted to the fee simple landowners upon abandonment, the railroad's interest ended at that point.  The railroad's consent to the new arrangement does not change anything because "the railroad cannot give what it does not have."  Toews, 376 F.3d at 1376.

    F.  Railbanking

A final question is whether a possible reactivation of the right-of-way corridor for rail service, even if remote and indefinite, could constitute a railroad purpose within the scope of the easement.  Defendant contends that the effect of the December 15, 2003 NITU is not simply to create a recreational trail, but also to keep the corridor intact for possible future railroad use.  Defendant views this railbanking feature as being within the railroad purpose of the original 1879 easements acquired by the M&BVRR.  Defendant's principal Kansas authority for this proposition is Atchison, Topeka & Santa Fe Railway Co. v. O'Leary, 100 P. 628 (Kan. 1909), where the Kansas Supreme Court held that a city's pavement of a street located on the railroad's right-of-way would not affect the railroad's future use of its easement.  The Kansas court held that "[i]f the [railroad] at any time has occasion to use this part of its right of way for railroad purposes, the presence of this pavement will not prevent it."  O'Leary, 100 P. at 629.

The Court, however, finds O'Leary to be readily distinguishable from the facts of this case. In O'Leary, the railroad was using its right-of-way for railroad purposes, and the controversy stemmed from the use of an easement portion as a city street. The holder of the easement was the railroad company, and the company was using the easement for railroad purposes. No abandonment of the easement had occurred. O'Leary, 100 P. at 628-29. Here, the facts are much different. Union Pacific had not used the right-of-way for rail purposes for more than two years prior to the STB's issuance of the NITU, and Union Pacific intentionally abandoned the rail corridor with the expectation that the land would revert to the fee simple landowners. The STB blocked the reversion to the landowners by issuing the NITU. The current owner is the Marshall County Connection, Inc., which has no intention of any future rail use for the corridor.

In the present case, there is no evidence of any plan to reactivate the rail service – simply a speculative assertion by Defendant that some resumed rail service could occur in the future. The transfer of the easement to entities completely unconnected with rail service, and the removal of all rail tracks on the corridor, lead the Court to conclude that any future rail use simply is unrealistic. See Glosemeyer, 45 Fed. Cl. at 780-81 (citing Kansas City Area Transp. Auth. v. 4550 Main Assoc., Inc., 742 S.W.2d 182, 190 (Mo. Ct. App. 1987); Boyles v. Missouri Friends of the Wabash Trace Nature Trail, Inc., 981 S.W.2d 644, 649 (Mo. Ct. App. 1998). As noted earlier, Glosemeyer involved the application of Missouri law, but the Court finds that the speculative and hypothetical assertions of possible future rail use would produce the same result under Kansas law. No basis exists to say that the mere mention of railbanking, without more, saves Defendant from the consequences of a Fifth Amendment taking.

## Conclusion

Based upon the foregoing, the Court GRANTS Plaintiffs' motion for summary judgment on liability, and DENIES Defendant's cross-motion for summary judgment on liability. The Court will schedule a status conference with counsel of record within 20 days from this date to establish further proceedings in this case.

IT IS SO ORDERED.

                                        s/Thomas C. Wheeler
                                        THOMAS C. WHEELER
                                        Judge