# In the United States Court of Federal Claims

No. 09-042L

(Filed: July 20, 2012)

```
************************************  *
                                      *
ANNA F. NORDHUS FAMILY TRUST,         *
et al.,                               *
                                      *
                 Plaintiffs,          *
                                      *
v.                                    *
                                      *
THE UNITED STATES,                    *
                                      *
                 Defendant.           *
                                      *
************************************  *
```

National Trails System Act, 16 U.S.C. § 1241 et seq. (2006); Fifth Amendment Takings Claim; Appropriate Measure of Just Compensation; Fencing Costs.

*R. Deryl Edwards, Jr.*, Law Offices of R. Deryl Edwards, Jr., Joplin, Missouri, for Plaintiffs.

*Mark S. Barron*, with whom was *Ignacia S. Moreno*, Assistant Attorney General, Natural Resources Section, Environmental & Natural Resources Division, U.S. Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

Plaintiffs are Kansas real property owners, who joined their Fifth Amendment takings claims in one action for resolution of common issues of federal and Kansas law. In an April 12, 2011 opinion, this Court granted Plaintiffs' motion for partial summary judgment on liability, determining that the Government was liable for a Fifth Amendment taking of Plaintiffs' reversionary interests in a railroad easement by virtue of the National Trails System Act Amendments of 1983, 16 U.S.C. § 1241 et seq. (2006) (the "Amendments"). Nordhus Family Trust v. United States, 98 Fed. Cl. 331 (2011) (liability decision). Left to be addressed, however, is the issue of just compensation.

Following the Court's liability decision, the parties exchanged appraisal reports for the purpose of determining the just compensation due to Plaintiffs under the Fifth

Amendment. <u>See</u> Order, July 8, 2011.  While the parties reached a tentative agreement on the per acreage value of Plaintiffs' land, they were unable to reach agreement on the method for calculating just compensation in this case.  <u>See</u> Order, Mar. 19, 2012.  On May 18, 2012, the parties filed cross-motions for partial summary judgment, proposing different methods for determining the just compensation owed to Plaintiffs.  <u>See</u> Pl.'s Mem. (May 18, 2012), Dkt. No. 75; Def.'s Mem. (May 18, 2012), Dkt. No. 71.  On June 21, 2012, the Court heard oral argument on the parties' cross-motions at the National Courts Building in Washington, DC.

Plaintiffs claim that they are owed "'the difference between the value of plaintiffs' land unencumbered by a railroad easement and the value of plaintiffs' land encumbered by a perpetual trail use easement subject to possible reactivation as a railroad.'"  Pl.'s Mem. 24 (quoting <u>Raulerson v. United States</u>, 99 Fed. Cl. 9, 12 (2011)).  In addition, Plaintiffs claim that they are entitled to compensation for the cost of fencing, allegedly needed to restrain livestock and protect both Plaintiffs' property and the public.  <u>Id.</u>  By contrast, the Government submits that the appropriate measure of just compensation is "the difference between Plaintiffs' land encumbered by a railroad easement and that land encumbered by a trail easement and subject to possible reactivation as a railroad easement."  Def.'s Mem. 15.  For the reasons set forth below, the Court finds that Plaintiffs' proposed method is the proper one for determining just compensation in this case.

I.   <u>Background</u>[1]

A.  The Amendments to the Trails Act

In 1983, Congress enacted the Amendments to the Trails Act to preserve railroad right-of-ways no longer in service and to allow interim use of the land as recreational trails.  <u>Preseault v. Interstate Commerce Commission</u> ("<u>Preseault I</u>"), 494 U.S. 1, 6 (2006).  To this end, Section 8(d) allows a railroad wishing to cease operations along a particular route to negotiate an agreement with a State, municipality, or private organization to assume financial and managerial responsibility for the right-of-way.  <u>Id.</u> at 6-7.  To do so, a railroad must apply to the Surface Transportation Board ("STB") for a Notice of Interim Trail Use or Abandonment ("NITU"), which "provides a 180-day period during which the railroad may discontinue service, cancel tariffs, and salvage track and other equipment, and also negotiate a voluntary agreement for interim trail use with a qualified trail operator."  <u>Id.</u> at 7 n.5.  If the parties reach agreement, the land may be

---

[1] This Opinion and Order includes only those facts necessary for determining the appropriate measurement of just compensation owed to Plaintiffs.  For additional background information on the Trails Act, as well as the facts of this case, see the Court's April 12, 2011 Opinion and Order.  <u>Nordhus Family Trust v. United States</u>, 98 Fed. Cl. 331 (2011) (liability decision).

conveyed to the trail operator for interim trail use; if not, the NITU "automatically converts" into a notice of abandonment. Id.

B. The Union Pacific Railroad Line

The Union Pacific Railway Company ("UP") operated a railroad between mile post 133.13 near Marysville, Kansas through and including mile post 125.00 near Marietta, Kansas. On October 29, 2003, UP submitted a Notice of Exemption to the STB stating that it intended to abandon this railroad corridor. See Union Pacific Notice of Exemption, Oct. 29, 2003 ("There appears to be no reasonable alternative to the abandonment."). In its Notice of Exemption, UP noted that "[t]he title to all of the operating right-of-way is reversionary in nature." Id.

By letter dated December 4, 2003, UP indicated its willingness to negotiate with the Nebraska Trails Foundation for interim trail use. On December 15, 2003, the STB issued a decision granting a previous request by the Nebraska Trails Foundation for issuance of a NITU and a public use condition. Nearly two years later, on December 6, 2005, UP and the Nebraska Trails Foundation executed a quit claim deed, whereby UP conveyed its entire interest in the railroad corridor to the Nebraska Trails Foundation. Union Pacific Quit Claim Deed, Marshall County, Kansas Recorder of Deeds Office, Book 433, pages 649-52 (Dec. 6, 2005). On December 12, 2005, UP posted a letter to the STB advising that UP, as of December 6, 2005, had "discontinued service . . . between Milepost 133.3 to Milepost 125 . . . pursuant to the National Trails System Act."

II.    Standard of Review

Summary judgment is appropriate where the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. RCFC 56(a). In examining the factual record, the Court must draw all reasonable inferences in favor of the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment will not be granted if "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In the case of cross-motions for summary judgment, the Court will deny both motions if, upon the required analysis, a genuine issue of material fact exists. TVA v. United States, 60 Fed. Cl. 665, 670 (2004) (internal citation omitted).

III.    Analysis

A. The Appropriate Measure of Just Compensation

In its liability opinion, the Court determined that UP had abandoned its right-of-way as a matter of Kansas law. Nordhus, 98 Fed. Cl. at 338. Specifically, the Court

3

found that UP's "regulatory filings with the STB unequivocally expressed an intent to renounce the railroad's interest in the right-of-way" and that UP "actually rid itself by conveyance of its entire legal interest in the[] easements." Id. Thus, had the STB not issued the NITU on December 15, 2003, UP's easement would have reverted to Plaintiffs in fee simple following the abandonment. Id. By blocking the reversion of the easement, the STB's issuance of the NITU constituted a taking of Plaintiffs' property interests requiring just compensation. Id.

As noted above, the parties propose different methods for determining just compensation in this case. The parties agree that the proper measurement of just compensation in a Fifth Amendment case is the difference in market value of Plaintiffs' property before and after the Government action constituting the taking, i.e., before and after the STB's issuance of the NITU. See Def.'s Mem. 13; Pl.'s Mem. 15-16. The parties disagree, however, as to the nature of the property interest that Plaintiffs possessed before the STB issued the NITU.

The Government contends that "the Court's just compensation award must reflect the property interest Plaintiffs actually possessed at the time of the alleged taking." Def.'s Mem. 7. Looking to Kansas law, specifically Kan. Stat. Ann. § 66-525(a)(1), the Government asserts that UP did not abandon its state law property interest until *after* the STB issued the NITU on December 15, 2003. Id. at 9-11. On that premise, the Government posits that "[i]f at the time the NITU was issued, Union Pacific had not abandoned that easement under Kansas law, then Plaintiffs' property remained subject to a railroad easement at that time." Id. at 14. Accordingly, the Government maintains that just compensation in this case "is the difference between Plaintiffs' land encumbered by a railroad easement and that land encumbered by a trail easement and subject to possible reactivation as a railroad easement." Id. at 15.

Contrary to the Government's position, the measure of just compensation does not depend on the nature of Plaintiffs' property interests at the time of the NITU "but rather 'upon the nature of the state-created property interest that [Plaintiffs] would have enjoyed absent the federal action and upon the extent that the federal action burdened that interest.'" Nordhus, 98 Fed. Cl. at 336 (quoting Preseault I, 494 U.S. at 24) (O'Connor, J., concurring). It is well established that when a railroad right-of-way is converted to interim trail use under the Trails Act, a taking occurs, if at all, "when state law reversionary property interests that would otherwise vest in the adjacent landowners are blocked from so vesting." Barclay v. United States, 443 F.3d 1368, 1373 (Fed. Cir. 2006) (quoting Caldwell v. United States, 391 F.3d 1226, 1233 (Fed. Cir. 2004)). As set forth in this Court's liability opinion, UP's easement would have reverted back to Plaintiffs in fee simple under Kansas law if not for the STB's issuance of the NITU. Nordhus, 98 Fed. Cl. at 337-38. Thus, the fee simple value of Plaintiffs' properties is the appropriate "before" value to calculate just compensation.

4

The Government's argument—that Plaintiffs must show that abandonment occurred *before* issuance of the NITU—runs contrary to the operation of the Trails Act. One of the principal purposes of the Amendments to the Trails Act is to ensure that abandonment, when contemplated by a railroad, does not in fact occur.  See Caldwell, 391 F.3d at 1229.  Instead, the Trails Act "provides an alternative to abandoning a railroad right-of-way" by allowing a railroad to negotiate a trail use agreement with a prospective trail operator.  Id. (internal citations omitted).  As the Federal Circuit explained in Caldwell:

> If the railroad and the trail operator indicate willingness to negotiate a trail use agreement, the STB stays the abandonment process and issues a notice allowing the railroad right-of-way to be 'railbanked.'  The effect of the notice, if the railroad and prospective trail operator reach an agreement, is that the STB retains jurisdiction for possible future railroad use and the abandonment of the corridor is blocked '*even though the conditions for abandonment are otherwise met*.'  Specifically, section 8(d) provides that 'such interim use [for trails] shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.'  Thus, section 8(d) . . . prevents the operation of state laws that would otherwise come into effect upon abandonment-property laws that would 'result in extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners.'

Id. (internal citations omitted) (emphasis added).

Here, by means of the NITU, the Trails Act blocked abandonment of the railroad easement and the consequent reversion of the property to Plaintiffs in fee simple under state law.  Accordingly, the property interest taken from Plaintiffs was a fee simple unencumbered by any easement, and the proper measure of just compensation "is the difference between the value of [P]laintiffs' land unencumbered by a railroad easement and the value of [P]laintiffs' land encumbered by a perpetual trail use easement subject to possible reactivation as a railroad."  Raulerson, 99 Fed. Cl. at 12 (internal citations omitted).[2]

---

[2] While the Court finds that UP eventually abandoned the railroad corridor and thus, that Plaintiffs would have enjoyed a fee simple interest unencumbered by any easement if not for issuance of the NITU, case law from this Court and the Federal Circuit suggests that it is possible the Court need not address the abandonment issue at all.  In its liability decision, this Court concluded that under Kansas law, trail use and railbanking do not "constitute a railroad purpose within the scope of the easement."  Nordhus, 98 Fed. Cl. at 338.  Courts in this Circuit have indicated that, if trail use exceeds the scope of the railroad easement, there is no need to address the issue of abandonment.  Ellamae Phillips Co. v. United States, 99

B.  Whether Just Compensation Includes Fencing Costs

Plaintiffs also assert that the Government owes them just compensation for the cost of building and maintaining fencing, gates, and cattleguards along the railbanked right-of-way.  Pl.'s Mem. 3.  Plaintiffs characterize the property along the railbanked right-of-way as primarily agricultural but insist that fencing is needed to "restrain livestock," in part "for public safety" and to shield the owners "from legal liability."  Id. at 33.  Plaintiffs also aver that the fencing is necessary to keep the public away from Plaintiffs' private property and "exposure to possibly dangerous agricultural activities." Id. at 33-34.  Plaintiffs contend that "[h]istorically, the Union Pacific Railroad installed and maintained fencing" along their properties, but that due to the 2003 NITU, "the UP has abandoned its fencing obligations."  Id. at 34, 37.

The Court finds that Plaintiffs' claim for just compensation for fencing costs raises multiple fact issues that make it inappropriate to resolve the claim at this stage.  It is not clear from the parties' filings whether the property owners maintained fencing on their properties prior to UP doing so.  Moreover, it is unclear whether all of the property owners require fencing to restrain and protect livestock, or whether fencing is needed to protect only agricultural lands.  If animals ordinarily would roam within the vicinity of Plaintiffs' properties, the Court opines that fencing would be required regardless of the existence of any railroad easement or trail use easement.  Finally, the Court notes that fencing may be more or less essential depending on how the trail is currently being used, such as whether the trail is used only by walkers and bikers as opposed to motorized vehicles.  In light of the above, the Court finds it inappropriate to resolve the issue of fencing costs without further factual development.

IV.  Conclusion

On the issue of the proper method for determining the just compensation owed to Plaintiffs, Plaintiffs' motion for partial summary judgment is GRANTED, and Defendant's motion for partial summary judgment is DENIED.  The parties shall direct their appraisers to measure the just compensation owed to Plaintiffs as the difference between the fair market value of their properties held in fee simple and the fair market value of the same properties burdened with the current Trails Act easement.

The Court requests counsel for the parties to file a joint status report within 30 days, on or before August 20, 2012, advising whether there are any outstanding issues requiring resolution by the Court.  If any such issues exist, counsel should propose procedures and a schedule for addressing those issues.  If no further issues exist, counsel

Fed. Cl. 483, 487 (2011) ("Since we have determined that trail use exceeds the scope of the easement, we have no need to address the contingent issue of abandonment."); Longnecker Prop. v. United States, 2012 U.S. Claims LEXIS 469 (Apr. 30, 2012) ("[I]f the scope issue is decided in favor of plaintiffs, it could be determinative regarding the issue of abandonment.") (internal citations omitted).

should indicate whether the case may be dismissed through settlement or whether a final judgment should be entered.  A proposed description and amount of the final judgment should be provided.

     IT IS SO ORDERED.

<u>s/Thomas C. Wheeler</u>
THOMAS C. WHEELER
Judge